REQUESTED BY: Senator Janis McKenzie
You have requested an Attorney General's Opinion regarding the applicability of LB 377 to existing contracts between ethanol producers and the State of Nebraska. Specifically, you ask whether the new language in Section 7, lines 20 through 23 of LB 377 (Final Reading) affects preexisting Ethanol Production Credit Agreements between ethanol producers and the Department of Revenue.
Section 7 of LB 377 sets forth the requirements ethanol producers must meet to receive production credits in the form of nonrefundable transferable motor fuel tax credit certificates in the amount of twenty cents per gallon of ethanol produced in Nebraska. Subsection (3) provides:
 Any ethanol facility which is not in production on or before December 31, 1992, but which is in production at the rate of at least twenty-five percent of its name plate design capacity for the production of ethanol, before denaturing, on or before December 31, 1995, shall receive a credit of twenty cents per gallon of ethanol produced for sixty months beginning with the first month for which it is eligible to receive such credit and ending not later than December 31, 2000 , if the ethanol facility maintains an average production rate of at least twenty-five percent of its name plate design capacity for at least six months after the first month for which it is eligible to receive such credit.
(new language underlined).
Thus, LB 377 places an additional requirement on ethanol producers. In order to receive production credits an ethanol facility must not only achieve a production rate of at least twenty-five percent of name plate design capacity on or before December 31, 1995, but must maintain an average production rate of at least twenty-five percent of name plate design capacity for at least six months after becoming eligible for production credits.
A similar question to the one at hand arose regarding LB 243 in 1981. With regard to that legislation, former Attorney General Paul Douglas stated,
 It has long been recognized in this state that a statute may not operate retroactively where it would impair the obligation of a contract or interfere with a vested right. State ex rel. Douglas v. Nebraska Mortgage Finance Fund, 204 Neb. 445, 464, 283 N.W.2d 12 (1979). It was long ago recognized by the United States Supreme Court in Hodges v. Snyder, 261 U.S. 600 (1923) that private vested rights of parties cannot be taken away by subsequent legislation. A statute will not be applied retroactive even where such legislative intent is clear, where the effect would be to impair vested rights or contracts. Mooney v. Drainage District No. 1 of Richardson County, 134 Neb. 192, 278 N.W. 368 (1938); Karer v. Karer, 190 Neb. 610, 211 N.W.2d 116 (1973). Where its effect would be unconstitutional, its application would be limited to be prospective.
Op. Att'y Gen. No. 80 (April 24, 1981). See also Stoller v.State, 171 Neb. 93, 103-104, 105 N.W.2d 852 (1960); Op. Att'y Gen. No. 95027 (April 12, 1995) (discussing impairment of the State's own obligations by legislation). With regard to LB 377, however, impairment of contract concerns need not even be considered, as LB 377 does not evidence any intent that its provisions, and particularly Section 7, be applied retroactively. A legislative act operates prospectively and not retrospectively unless the legislative intent that it operate retrospectively is clearly disclosed. Young v. Dodge County Bd. of Supervisors,242 Neb. 1, 6, 493 N.W.2d 160, 163 (1992).
Consequently, the new provisions contained in Section 7 of LB 377 would operate prospectively, and would not apply to existing Ethanol Production Credit Agreements between ethanol producers and the Nebraska Department of Revenue.
Sincerely yours,
 DON STENBERG Attorney General
 Steve Grasz Deputy Attorney General
APPROVED BY:
Don Stenberg 
Attorney General